17-1402. Thank you very much. Counselor Gair, is that correct? Yes, Your Honor. Thank you, Judge Grainne, and may it please the court. And you reserved three minutes of your time for rebuttal. Yes, Your Honor, I did. OK. Your Honors, I'd like to begin today with two undisputed propositions about the federal tax law at issue in this appeal. First, it is undisputed that when Congress passed the statute at issue in this case, it intended to incentivize the creation of environmentally friendly blended fuels by granting a tax credit to companies that blended such fuels. Is there any reason to think that it intended to drastically increase the pre-existing incentive for that as opposed to drastically increase the amount of the receipts that were going to be committed into the highway trust fund? Yes. The statute wrote the legislative history, the structure, and I'll explain all those. And I'd also just quarrel a little bit with the premise of that question, which is that this is a drastic benefit. And maybe I can start by just explaining the benefit at issue here. It's undisputed that Congress did grant a credit to companies that blended fuels. The credit is expressed in terms of $0.51 per gallon of alcohol used in the gasoline to blend it. For ethanol, which is about 10% alcohol, that works out to about $0.05 a gallon credit. And ultimately, the issue in this case is whether that credit is worth $0.05 or $0.055. There is a lot of money involved because the plaintiff here, Sunoco, paid billions of dollars in excise taxes as well. So there are large amounts of money involved. But the government has drastically overstated the amount of the benefit that we're claiming here. And moreover, the government is in a difficult position because the government acknowledges that companies that simply blend the gasoline are entitled to the full value of the credit. And yet, their position- By the way, I didn't see information about whether the- telling me anything about the dollar size or even percentage of the net payouts from the United States Treasury to people as opposed to the credits. Are we talking about- I understand there's- that under, what is this, 60- 6427E1, there are going to be some payments. Is that- and you make, obviously, a quite big deal out of that. But as a- do we have any information about whether, as a practical matter, that's a small amount or either relatively or- Your Honor, it's not on the record. My understanding is that it is not a major proportion of the dollars that flow both ways in this. That most of the manufacturers claiming credits also remove the gasoline from a refinery in an unblended state, which is what triggers the excise tax. But it has to be acknowledged that Congress recognized that there would be companies that didn't remove the gas and incur the excise tax, but simply blended it. And for those companies, Congress gave it the same credit.  are entitled to the full value of the credit. And so its position before this court is that somehow the same credit means something less when the company not only blends it, but removes it from the refinery and therefore incurs the excise tax. And to go to the statutory text, I think maybe the most, the clearest indication that this is not what Congress had in mind is that when Congress wanted a credit to offset the value of a deduction, it said so. It said so in the very same act, in the very set of eight pages that Congress enacted in the Jobs Act here. And that's in section 280C, which dealt with the credit. Now we're moving off 9503, which I think is fair to say was a centerpiece of your argument, and maybe is not so strong a point because it starts with, for purposes of this paragraph, we're even moving off, was it 6427? And let me ask you this question about 6427, E1 and E3. The natural meaning of those provisions to me is that the payments under E1 are not the credits because E3 says the payments, actually distinguishes the payments from the credits, which seems to me to support, and I want your response to this, rather strongly the government's view that your attempt to treat the credits as a payment of tax, just like the payment out of the government to the pure blenders. Right, and so I think what the E section of 2427 does is say that where you've taken the credits in 6426, you don't also get the payment. Now with respect to whether the credit is operating as a payment, it is. I mean, first of all, the legislative history says that it's legislative history, but page 304 of the conference report says the credit is a payment of the tax payers' taxes. Right, but I guess it seems to me that the language of E3 and E1 cuts against that. That is, it makes the distinction between payments and credits. But your honor, you're right that there is that distinction there. But then the question is, does the credit operate as a payment? Legislative history says that, the conference report says that. I would say go to the excise tax form, form 720, which was submitted in the Court of Federal Claims at document 333. And you work through that form. Not in the appendix. It's not in the appendix. I apologize. But when you work through that form, what you see is it starts with the taxes. And that includes the excise tax at issue here in line 79 of part 1 of the form. And then it's not until part 3 that you start with the total tax. And then you back out claims, which include the credit at issue in this case, to get at the balance. And so it's clear from that that the credits are operating as a payment. I would also point you to the August 29, 2003 Chief Counsel Memorandum, which is at document 2222 in the Court of Federal Claims. And there, the Chief Counsel for the IRS explains that the way that you calculate the amounts here is you start with gross income. You apply the tax rate to that to determine your tax liability. And then you apply credits and payments against that tax liability. Again, making clear that the credits are working as a payment. Section 31 of the code is perhaps. So that interpretation represents a significant revenue effect. And the joint committee statement in the Jobs Act said that the Jobs Act would have no revenue effect. Your position seems to be a significant revenue effect. Well, Your Honor, we would quarrel with the amount of the revenue effect. But what I would say to that is, first, courts have recognized that those sorts of statements in committee reports are a notoriously poor indicator of congressional intent. That's the first point. The second point is we know that had to be wrong because the government itself acknowledges that the credit in 6427, that is a new benefit that went to companies that simply blended the gasoline. And that clearly had a revenue impact on the law. But quite possibly quite small. Well, we can debate that if that's. I mean, you answered probably my first question. Quite small. I think it's material, Your Honor. The third point is that this court's responsibility is not to weigh what it believes the revenue effects would be, but to give effect to the statute that Congress enacted. The Supreme Court has made that clear. And the government's argument here really does fall back on this notion that somehow this is going to have an unwarranted impact on the FISC. To be clear, the statute at issue in this case has expired. It was expired in 2011. There's a three-year window for refund claims. That in itself sort of cuts against the sky. Should we make anything of the fact that your company's presumably very good tax lawyers for several years after 2004 thought that the right way to proceed is the way that the government is urging here? Your Honor, no more than you would in any refund case. This comes up all the time where taxpayers make mistakes and then come into court and argue that they made an overpayment and the courts determine whether or not that's correct as a matter of law. So no, I don't think that you can make anything out of that. We discovered our error. We filed a timely claim for a refund. And we're here explaining why we're entitled to the full value of the credit that Congress granted. I would also point you to the language that Congress used in 6426, the against the tax imposed language that the government itself points to. What's significant about that language is it tracks verbatim the same language used in section 31 of the code, which is the credit applied for withholding taxes. When the government withhold taxes from your salary, that is a classic credit where the amount of withheld wages is applied as a credit against the tax owed. And everybody understands that when those withheld wages are paid against your tax owed, they're operating as a payment. They're not decreasing your tax liability to begin with. And yet, that's the very same language that Congress chose in the credit provision at issue here, which is another indication that Congress intended this credit to operate as a payment. I would also, your honors, point you to the conference report, the legislative history, which is something we think that's appropriate to consider here. We're not arguing that the language is unambiguous, but we do believe that when you look at all indicia of congressional intent here, you come to the conclusion that Congress did intend the same credit to mean the same thing. If your position is accepted, it seems that you would be, Sunoco would be entitled to receive a significant windfall. Don't call it a windfall. Let's just say a significant payment from the government. And I think the government argues that this is indeed a windfall. You're arguing in favor of looking at the legislative intent. Where in the history do we see that Congress intended that this type of effect to occur? Well, certainly the Congressional Research Service reports recognize that there was a greater subsidy. The CRS? I mean, that's even less of a legislative authority than the committee report that you said was not. Well, courts have relied on it both ways. And we certainly go to that first because we think the law that Congress enacted should control. But with respect to the notion that this is a windfall, our position is that a $1 credit is worth $1. The government acknowledges that $1 credit is worth $1. But this is a difference of, what, $300 million? On top of $6 billion in excise taxes we paid. So yes, the amounts add up, Your Honor. But again, ultimately the question before the court is, did Congress enact a scheme where it said we want you to blend this gas for environmental purposes? If you're a company and you just blend it, you get a $1 credit. That means it's $1. But if you're a company that happens also to bear an excise tax because you remove it from a refinery to begin with before it's blended, then that $1 credit isn't worth $1. And again, when Congress wanted a credit to offset a deduction, it said so. It said so in Section 280C. Congress didn't say so here. You're into your rebuttal time. Thank you, Your Honor. OK. Thank you, sir. Counselor Hagley. Good morning, and may it please the court. Sunoco's $300 million refund claim was properly rejected because it's not entitled to treat as a cost a tax that was never required to pay. Sunoco never incurred the full amount of the tax, only the amount of the tax as reduced by the credit. It's the only amount of tax that the government received. The highway trust fund was credited with the full amount of the tax. It's just an accounting concept made possible by the special rule in 9503B. But that special rule, by its very terms, is limited to the highway trust fund. It doesn't apply more broadly, as Sunoco argues, to computing how much tax payment. So what's your strongest case law to support that a tax credit can be used to reduce liability? Well, just that a tax credit reduces liability. The Supreme Court recognized that in the Randall case when it was analyzing what a federal tax credit is. And it said that it's not income or asset. It's just the right for the taxpayer to pay less tax. We see the same, the tax court relied on Randall in the Maynes case and in the Temple case, where it reached the same conclusion that a tax credit is not a payment that the government owes the taxpayer. It's just the right to pay less tax to the government. And then in Revenue Ruling 79315, the Sixth Circuit Snyder decision, and in the recent case that we provided you, Hart Furniture Oil Tax Court case, the court said that because, and the IRS said, because a tax credit reduces tax expense, it also reduces how much the taxpayer may deduct or include in costs of goods sold. Two of the points that maybe it's fair to say Mr. Garf featured are the following. One, what Congress did with respect to 280C, and I'd like you to try to explain that in a way I might understand. The second is that in the government's view of the statute, what I'll call the pure blenders, the ones not liable for the excise tax, the ones who get cash from the Treasury, are being given a larger ethanol incentive than his clients who do pay the excise tax. And if I've misstated those two points, maybe you can get at what I should have said. No, I think you stated them perfectly. And let me address the second one first. With regard to the blenders who can get a payment versus the blenders who can only get a credit, this may not be obvious from our brief, so let me sort of explain that there's two different ways that blenders can operate. And by the way, do you happen to know anything about the magnitudes involved? I don't know the numbers. I do believe that, as Mr. Garf said, that most blenders are in Sinoco's situation. They're not entitled to a payment. They're only entitled to a credit. That's my understanding. But the comparison is really an apples to orange comparison because the two different blenders are operating differently. You receive, and let me explain that. You receive a credit for blending alcohol into the gasoline. And for every gallon of alcohol, it requires nine gallons of the gasoline because the blenders, it's a nine to 10 blend. So some blenders, most blenders like Sinoco, will blend alcohol into gasoline that is not previously taxed. And so they will be exposed to the tax on the entire 10 gallons. I'm gonna round the numbers so I can do the math. So 18 times 10, $1.80. That's more than the credit they're never going to be. It's mathematically impossible for them to receive a payment. Some blenders will blend into previously paid gasoline where the tax has been previously paid. And by operation of 4081B, the tax will only be imposed on the extra gallon of alcohol that's included in the blend. So they will face 18 cents, which would be less than the credit. So they would be entitled to a 32 cent payment. But this was also true for the JOBS Act. Blenders who blended into previously paid gasoline received a payment under 6427F. We've cited that many times in our brief. It's disregarded by opposing counsel. But my point is that blenders who are operating the second way with their blending into previously paid gasoline presumably pay more for their gasoline. And so it's really difficult- Can I just be clear? I think I get this. But in this example you're talking about where they're blending into gasoline that's been previously paid by the tax. Somebody else has already paid an excise tax on this. Somebody else has. And so as long as they can provide evidence to the IRS that that tax has been paid, I think perhaps they would get certificates or something from whoever they bought the gasoline, they will receive a credit under 4081B2 against the tax imposed by 4081B1. This is in our brief. I think it's page 35 through 36. And will therefore only, the only tax that is imposed is the 18 cents on the alcohol. And then they can apply the credit against that receipt of payment. But there's nothing unusual about the fact that the credit, the billion in dollars of credits that they received is worth less once you consider the income tax. Because anytime you're able to reduce a deductible expense, it has an impact on income tax. Whenever we refinance, my husband and I refer to it as good news, bad news. We get a better loan, we're gonna pay a lot less money to the bank, but we'll pay a little bit more money to the federal government because our interest expense deductions have gone down, which will increase our taxable income. But there's nothing unusual about that. And 280C. That relates to an income tax credit that did not reduce deductible expense. And it was a credit that was received for production of low-sulfur diesel fuel and prevented double benefit. The code provides that any deductions that were taken or could be taken, any actual payment to making that low-sulfur diesel fuel, so whatever a taxpayer may have paid for sulfur, cannot be taken to the extent of the credit. There is no reason for a similar rule in the context of 6426 because the credit itself reduces the deductible expense in the first instance. So there's no actual payment of the tax that could be deducted. In the same way that there's not a special rule for state tax credits that are applied to reduce state tax payment because it directly reduces the amount of payments, state tax payments that are made. And that was probably better written in the brief, but it's just an apples and oranges comparison again to look at that. We've explained in our brief that we think that the plain language of the statute demonstrates that Congress intended the 6426 credit to reduce the amount of tax that Sunoco was required to pay and therefore its deductible tax expense. We rely first on language of 6426A1, which does provide that a credit against the tax imposed by 4081. And that is most naturally read as that the credit is part of the computation of the taxpayer's tax liability. Credits, again, are not payments. They are part of the computation of a tax. We see this worn out. Is that language similar to the Title 31 against the tax language that Mr. Garr was referring to? Part of the language is similar, and Section 31 does not demonstrate that credits pay tax liability. Section 31 demonstrates- Section 31? Section 31 demonstrates that if you pay your tax liability through withholding, the government is going to give you a credit for that. So every two weeks, part of my income is withheld by the Department of Justice to pay my taxes. My employer is acting as an agent of the IRS. If that agent fails to give my tax money over to the IRS, the IRS is going to give me credit and go after the department for failing to send the funds over. So I'm not going to have to pay my tax twice, but this doesn't demonstrate that credits generally pay a tax liability. The taxpayer pays the tax liability through the withholding. And the reason why, with regard to Section 31, the credit is not part of the computation of liability, it's not because of the language that's in Section 31, it's because of a special rule that's in Section 6211B, which is the definition of deficiency, and there's a rule there that applies to Section 31 and to Section 33, but not any other credit, and both of those are credits that involve withholding by a taxpayer. It says that when we're computing the amount of taxes imposed, we're not going to consider 31 credit or the 33 credit as part of that computation, but all other credits would be considered part of the computation of the tax liability, the taxpayer tax. Are there any other further questions? So if Congress wanted to depart from the general rule that a taxpayer can deduct excise tax liability, why didn't it do so? I mean, it understood the scheme very well and wanted to make sure that the highway fund was replenished at the right rate, and there was a scheme in place, and I don't see that Congress addressed that and addressed what it now views as an unintended effect. Well, Congress did not intend to increase the tax subsidy being provided to fuel blenders. What it said in the history is that it intended to, and it did, replace the prior reduced rates with the excise tax credit, and just replacing the reduced rates with the excise tax credit, the Joint Committee of Taxation's analysis was that it's not supposed to have a revenue impact, wasn't going to bring in new funds, wasn't going to cost the government anything. It was just changing the structure, and even the CRS report that the taxpayer relies on recognizes that the amount of taxes that were actually owed and paid to the government are exactly the same after the JOBS Act as before. This is page 1997 and 1999 of the Joint Appendix. The flaw in the analysis in the CRS report is thinking that a taxpayer was entitled to deduct more than the amount of actual tax owed and paid to the government. That's contrary to basic background principles. It's contrary to the rules regarding how you compute the tax liability for purposes of what's incurred or paid, and we cite these regulations on page three of our brief. Some of the legislative history, I don't remember whether it's the House report or the conference report, speaks of wanting to put more money into the Highway Trust Fund, but it also speaks of a problem of fraud in the earlier regime. What was that, and how did this solve it? Right, right. There are three reasons for restructuring. There's mainly the Highway Trust Fund, but the fraud, the way the fraud came up is before, when there were reduced rates, taxpayers could say, I'm selling this gasoline to someone who is going to blend. I'm entitled to claim the reduced rate, and then the blending would never occur. And then the third reason was- And hence the focus in the new statute on the timing, as of the time of it, right, okay. And then the third reason, there were three reasons for change, and the third reason was just to simplify, because under the reduced rates, there was a tier of analysis depending on how much alcohol was actually blended in. But what Congress did not say is they did not say, we are increasing the tax subsidy for fuel blenders. That was not one of the reasons for the change. And if Congress really did want to increase it, you would think that they would have promoted it as opposed to keeping it secret. It took Sunoco almost eight years to discover this purported tax benefit. And while Sunoco is absolutely entitled to change its mind and come into court and seek a refund and say, we got it wrong, we do think that, to the extent the court thinks that the law isn't clear, a tax deduction needs to be clearly provided for. And the fact that it took Sunoco almost eight years to find it meant that it's not clearly provided for. Is this same issue currently before the Fifth Circuit or in the district court? It's before the district court in Texas and the ExxonMobil case. And also it's before the tax court in the Gromar case. We cite both of those decisions in our related cases. And there's an IRS ruling on this particular issue too. There's a presidential IRS ruling that specifically addressed it, notice 2015-56. What about the Court of Federal Claims that says that what the government has done here is a sleight of hand? What did it mean by that? I would disagree that it's a sleight of hand because I think the statute on its face, Congress was clear of what it was doing. I think what it meant was it was raising the rates but providing a tax credit to reach the same result. And I guess in some level you can view that as a sleight of hand, but since the credit is on the face of the statute and the special rule in 9503B was on the face of the statute it's really not a sleight of hand. Well could it be that it changed the law, it sees unintended effect, it's taken a position that's a sleight of hand and that's creating this, that's a fiction? I mean I think the only fiction is that the money going into the Highway Trust Fund is coming from gasoline taxes. And that only, the money, a lot of it is actually coming from the general fund and the way that happens is by the special rule set out in 9503B, which says for purposes of the Highway Trust Fund the amount of taxes received under 4081 shall be computed without regard to the offsetting credit in 6426. Okay. Thank you very much. Thank you very much. You have three minutes, Mr. Geer. Thank you, Your Honors. Your Honors, I think the sleight of hand is that the government does not want the law to have the effect that Congress laid out, which is to say that one of the central purposes of this law was to increase the funding going into the Highway Trust Fund. The way to do that was to increase the excise tax so you could increase the taxes received. And the way that Congress did that was to increase the level of tax and give you a credit that you could use to pay that excise tax. And then 9503B makes clear that those funds go into the Highway Trust Fund. What's significant about 9503 is it recognizes that the taxes are received, all of them, including the ones received through payments. And we know that because it's the taxes received without reduction. If the government were right, then what Congress would have said in that rule is that the amount of the taxes received should be increased by the amount of the credits. But that's exactly the opposite of what Congress said. Why is that for purposes of this paragraph in 9503? Well, the first thing I would say is if you look at 9503 as a whole, that phrase occurs repeatedly throughout that. I think Congress is just referring to a complex provision. You've got different subsections. It wants to make clear that it's addressing this for purposes of money going to the Highway Trust Fund. Nothing in that, for purposes of paragraph, takes anything away from the other statutory provisions that I've pointed here today. And it's perfectly consistent with our construction of the statute. With respect to whether a credit is a payment, it is a payment. Anyone who has had their wages withheld and used those to satisfy their tax liabilities know that those wages are going to pay their tax liability, not to reduce their tax liability. The language in 31, as even the government acknowledged, is identical with respect to the language in 6426 in terms of the credit against the tax imposed. With respect to 280C, it's true that that dealt with income versus excise taxes. But with respect, that's irrelevant to the point that when Congress wants to express that a credit should offset the amount of the deduction, it does so. It did so in 280C. It didn't manifestly do so in the provision here. And under the Rosello case from the Supreme Court, we know that that's significant indicia of Congress's intent. I think I heard the government say that they were entitled to the benefit of some added presumption here. That would be incorrect. Under this court's cases, notably USA Choice versus United States, any doubt goes to the taxpayer, not to the government. We think that the right conclusion here is to hold that after looking at all the indicia of Congress's intent, the statutory provisions, the legislative history that says that the credit is treated as a payment and that the full excise tax is imposed. And the other indicia that I pointed to here leads to the conclusion that the $1 credit that Congress enacted for all blenders is $1, whether you blend the credit, whether you blend the gas alone, or whether you happen to refine it first. And then blend it. We'd ask the court to reverse. All right, thank you very much.